CAMPBELL INDUSTRIES,
Plaintiff-Appellee,

v.

M/V GEMINI, Official No. 534,721, her engines, tackle, etc. in rem: Gemini Enterprises; Marty Zlotoff: Millie Zlotoff; and Does I–XX, in personam, Defendants-Appellants.

GEMINI ENTERPRISES,
Counterclaimant-Appellant,

v.

CAMPBELL INDUSTRIES,
Counterdefendant-Appellee.

No. 78–1324.

United States Court of Appeals,
Ninth Circuit.

April 30, 1980.

John J. Hargrove, San Diego, Cal., argued, David L. Buchbinder, Weeks, Willis, Hoffman & Hargrove, San Diego, Cal., for defendants-appellants.

Jerome E. Eggers, Jenkins & Perry, San Diego, Cal., for plaintiff-appellee.

Before WALLACE and ANDERSON, Circuit Judges, and PALMIERI,* District Judge.

WALLACE, Circuit Judge:

Gemini Enterprises, Inc. (Gemini) appeals from the district court's rulings excluding the testimony of an expert witness and excluding certain testimony concerning lost profits. We affirm.

I.

Gemini is the owner of the M/V GEMINI, a 1,500-ton tuna purse seiner, constructed by Campbell Industries (Campbell) in 1971. In the summer of 1972, and again during the summer of 1973, Gemini brought the M/V GEMINI into Campbell's San Diego, California shipyard for repairs. Camp-

---

* Honorable Edmund L. Palmieri, United States District Judge, Southern District of New York, sitting by designation.

bell performed most of the repairs at its own expense, pursuant to its warranty agreement with Gemini. Some work was charged to Gemini, however, because it involved repairs allegedly not covered by the warranty.

Gemini did not pay for the charged repairs. Campbell sued for payment in November 1973. Gemini counterclaimed, claiming that the M/V GEMINI, as originally constructed by Campbell, was defective and that Gemini was therefore not responsible for the charged repairs. In addition, Gemini sought damages for (1) the difference between the value of the M/V GEMINI as represented and its value as actually constructed, and (2) lost profits suffered by Gemini during periods when the M/V GEMINI was not operating due to shipyard repairs.

In July 1974, Campbell retained Nathaniel T. Torbert as an expert to inspect the M/V GEMINI and prepare an inspection report. After reviewing Torbert's report, Campbell decided to use Torbert as an expert witness at trial; therefore, Campbell listed Torbert as an expert witness to be called at trial on its witness list, which was submitted to the court in April 1976 and included in the pre-trial conference order. Torbert was also listed as a witness, though not as an expert, on Gemini's list.

Gemini hired three experts of its own to perform inspections of the M/V GEMINI. Gemini's experts inspected the ship at the same time as Torbert. Gemini called one of these experts to testify at trial.

In February 1977, approximately one month prior to trial, Gemini moved the district court for an order permitting it to take Torbert's deposition to perpetuate his testimony for trial. The affidavit submitted by Gemini's counsel in support of this motion revealed that Gemini's counsel had contacted Torbert *ex parte* on several occasions, even though Torbert was still employed by Campbell. Apparently, either because of these *ex parte* contacts or otherwise, Torbert had expressed a willingness to testify on behalf of Gemini. The district court denied Gemini's motion to take Torbert's deposition. In addition, as a sanction for Gemini's "flagrant violation" of the rules governing discovery of expert witnesses, Fed.R.Civ.P. 26(b)(4),[1] by making *ex parte* contact with Torbert, the court issued an order precluding any testimony by Torbert at trial.

In a separate pre-trial motion, Gemini sought to amend the pre-trial conference order to add several witnesses, including Melissa Smith, a bookkeeper familiar with Gemini's operations, to its witness list. Gemini urged that Smith's testimony was crucial to Gemini's proof of the damages alleged in its counterclaim. The district court denied this motion. At trial, Gemini moved again to amend the pre-trial conference order to add a different bookkeeper, Christine Springer, as a witness. After reviewing Springer's deposition and concluding that exclusion of her testimony would not prejudice Gemini, the district court also denied this motion.

---

1. Rule 26(b)(4) of the Federal Rules of Civil Procedure provides in part:

    *Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

    (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court

    may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

    (B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

## II.

Gemini concedes that its counsel's *ex parte* communications with Torbert while Torbert was still retained by Campbell violated the expert discovery rules, which require court permission for oral discovery of experts. Fed.R.Civ.P. 26(b)(4). Gemini argues, however, that the district court abused its discretion in precluding Torbert's testimony as a sanction for these rule violations.

A district court is vested with broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. *See, e. g., Halverson v. Campbell Soup Co.*, 374 F.2d 810, 812 (7th Cir. 1967); *Clark v. Pennsylvania R.R. Co.*, 328 F.2d 591, 594–95 (2d Cir.), *cert. denied*, 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964); 8 Wright & Miller, Federal Practice & Procedure § 2050 (1970). Within this discretion lies the power to exclude or admit expert testimony, *see Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *Williams v. Fenix & Scisson, Inc.*, 608 F.2d 1205, 1209 (9th Cir. 1979), and to exclude testimony of witnesses whose use at trial is in bad faith or would unfairly prejudice an opposing party. *See Clark v. Pennsylvania R.R. Co.*, *supra*, 328 F.2d at 594–95.

The district court considered Gemini's *ex parte* contacts with Torbert to be a flagrant violation of the provisions of Fed.R.Civ.P. 26, deserving strong sanction. One obvious factor in our review is that the preclusion of Torbert's testimony did not unduly prejudice Gemini's case: Gemini was not prevented from calling one or more of its three retained experts, who inspected the M/V GEMINI at the same time as Torbert. *Cf. United Airlines v. United States*, 26 F.R.D 213, 217–18 (D.Del.1960) (denying discovery of opposite party's expert, when moving party had own expert on scene); *Dipson Theatres, Inc. v. Buffalo Theatres, Inc.*, 8 F.R.D. 313, 313 (W.D.N.Y. 1948) (denying discovery of opposite party's accountant when evidence sought was within possession of moving party's own accountant). Indeed, one of Gemini's three experts testified at trial on precisely the issues that Torbert would have covered.

We cannot say that the district court's ruling, which was carefully fashioned to deny Gemini the fruits of its misconduct yet not interfere with Gemini's right to produce other relevant expert testimony, constituted an abuse of discretion. Courts need not tolerate flagrant abuses of the discovery process.

Gemini points out that the preclusion sanction is available under Rule 37 when a party fails to obey a court discovery order. It then argues that preclusion should be used only to rectify Rule 37 violations. But this would leave courts powerless to deal with discovery violations not arising in defiance of a court order. For example, parties have a duty, which may arise even without a court order, seasonably to amend discovery responses that were false when made or have since become false. Fed.R.Civ.P. 26(e). Few would question a court's inherent power to discipline breaches of Rule 26(e), even in the absence of a court order. *See* Wright & Miller, *supra*, at § 2050. The same need for discipline obtains here. We thus hold that it was within the court's inherent power to exclude Torbert's testimony.

## III.

Gemini's next contention is that the district court erred in refusing to allow amendment of the pre-trial conference order to permit testimony by Smith and Springer.

"A district judge is given broad discretion in supervising the pre-trial phase of litigation, with a view toward sifting the issues in order that the suit will go to trial only on questions involving honest disputes of fact or law." *FDIC v. Glickman*, 450 F.2d 416, 419 (9th Cir. 1971). *See Colvin v. United States ex rel. Magini Leasing and Contracting*, 549 F.2d 1338, 1340–41 (9th Cir. 1977). District courts should generally allow amendments of pre-trial orders when "no substantial injury will be occasioned to

the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight." *Angle v. Sky Chef, Inc.*, 535 F.2d 492, 495 (9th Cir. 1976), *quoting Sherman v. United States*, 462 F.2d 577, 579 (5th Cir. 1972). In the case before us, Gemini's motion did not satisfy at least the latter two of these criteria.

Gemini was not significantly prejudiced by its loss of Smith's and Springer's testimony. Gemini was permitted to introduce substantial evidence bearing on its yearly profits and losses. Smith's and Springer's testimony concerning Gemini's financial condition would thus have been merely cumulative. Gemini's pre-trial offer of proof in support of adding Smith as a witness gave no specific reasons why Smith's testimony was particularly necessary. As to the motion during trial concerning Springer, the district judge did not rule until he concluded, after reviewing her deposition, that Springer's testimony would not materially aid Gemini's case. *Cf. Colvin v. United States ex rel. Magini Leasing and Contracting, supra,* 549 F.2d at 1341 (district judge excluded evidence after reviewing offers of proof and party's deposition). Moreover, because trial had already begun when Gemini sought to add Springer, the district court was rightfully concerned that if Springer testified the trial would have had to be continued to permit Campbell sufficient time to prepare rebuttal testimony. Under these circumstances, we cannot find that the district judge abused his discretion.

### IV.

Gemini's final contention is that the district court miscalculated the consequential damages—lost profits—which Gemini allegedly suffered when its ship was taken to drydock for repairs in 1973 and 1974. This contention is groundless, because the district court specifically found that Gemini failed to prove any consequential damages. Although Gemini urges that the district court's finding that Gemini failed to prove lost profits was ambiguous, we disagree.

Moreover, Gemini brought no motion to clarify the finding. Accordingly, we must uphold this finding unless it is clearly erroneous. Fed.R.Civ.P. 52(a); *see United States v. United States Gypsum,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

 There was expert testimony that routine maintenance of tuna vessels requires a certain amount of time in port each year, and that the M/V GEMINI's time in port was not abnormal. The district court could reasonably have concluded from this evidence that the repairs needed to conform the ship to warranty specifications were not the proximate cause of any lost profits. Foreclosing recovery of lost profits obviously mooted the question of how these profits would be computed. Because the issue is moot, there is no reviewable error.

AFFIRMED.