******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JACQUELINE EPRIGHT *v.* LIBERTY
MUTUAL INSURANCE COMPANY
(AC 43969)

Alvord, Moll and Sheldon, Js.

*Syllabus*

The plaintiff in error, B Co., a law firm that represented the plaintiff, E, in
the underlying action to recover underinsured motorist benefits from
the defendant in error, L Co., filed a writ of error claiming that the trial
court improperly ordered sanctions, requiring B Co. to pay all costs
related to L Co.'s retention of D, an expert disclosed by L Co. as a
potential trial witness in the underlying case. L Co.'s disclosure indicated
that, on the basis of his review of E's medical records, D would opine
that E's shoulder injury was not related to the underlying motor vehicle
accident. During his deposition, however, D indicated that his opinion
might change if he learned that E had been complaining about her
shoulder injury since the date of the accident. Thereafter, without
informing or obtaining the consent of L Co., B Co. sent E's deposition
transcripts, in which she indicated that she had been complaining about
her shoulder pain since the date of the accident, to D and set up an
appointment for D to perform a medical examination of E. Prior to the
examination, B Co. filed a disclosure indicating that it intended to call
D as an expert witness at trial to testify that, contrary to his earlier
opinion, D believed that E's shoulder injury was a direct result of the
motor vehicle accident. Following the medical examination, D prepared
a report to that effect. Thereafter, the trial court granted L Co.'s motion
for expenses, requiring B Co. to reimburse L Co. for all expenses it had
paid to D for his expert services. *Held* that the trial court's order of
sanctions must be reversed because our rules of practice do not clearly
prohibit ex parte communications between an attorney and an expert
who previously had been disclosed by the opposing party as a potential
trial witness: pursuant to our Supreme Court's decision in *Millbrook
Owners Assn., Inc.* v. *Hamilton Standard* (257 Conn. 1), for a trial
court's order of sanctions for a violation of a discovery order or rule
to withstand scrutiny, the order or rule to be complied with must be
reasonably clear, and the applicable rule of practice (§ 13-4) in the
present case does not include language that explicitly prohibits ex parte
communications with experts who have been disclosed by an opposing
party; moreover, the trial court's holding that B Co.'s ex parte communi-
cations with D were implicitly forbidden because they were not explicitly
permitted by Practice Book § 13-4 was predicated on outdated authori-
ties that analyzed a pre-1993 version of rule 26 (b) (4) of the Federal
Rules of Civil Procedure, which the trial court claimed mirrored Practice
Book § 13-4 and provided the exclusive means for conducting discovery
of expert witnesses, however, the exclusivity language of the pre-1993
version of rule 26 (b) (4) is not included in the current version of the
rule or in the current version of Practice Book § 13-4; furthermore,
Practice Book § 13-4 (e), which establishes a procedure by which a
party can adopt and make use of an expert already disclosed by another
party, implicitly suggests that some sort of communication may be
required between opposing counsel and a disclosed expert to satisfy
the disclosure requirements of that subsection; accordingly, the trial
court's justification for the order of sanctions, which was based on its
finding that B Co.'s conduct with respect to D was wrongful, was clearly
erroneous.

Argued February 8—officially released May 31, 2022

*Procedural History*

Writ of error from an order of the Superior Court in
the judicial district of Middlesex, *Frechette, J.*, granting
a motion for sanctions filed by the defendant in error,
brought to the Supreme Court, which transferred the

matter to this court. *Reversed; judgment directed.*

*Mario Cerame*, with whom, on the brief, was *Timothy Brignole*, for the appellant (plaintiff in error Brignole, Bush & Lewis, LLC).

*Thomas P. Mullaney III*, for the appellee (defendant in error Liberty Mutual Insurance Company).

*Opinion*

SHELDON, J. This case comes before the court on a writ of error brought by the plaintiff in error[1] Brignole, Bush & Lewis, LLC, the law firm representing the plaintiff, Jacqueline Epright, in the underlying action to recover underinsured motorist benefits from the defendant in error, Liberty Mutual Insurance Company, in connection with a motor vehicle accident. The plaintiff in error seeks review of the trial court's order granting a motion for sanctions, which the defendant in error filed against it in the underlying action as a motion for expenses, pursuant to which the plaintiff in error has been ordered to pay the defendant in error all costs related to the defendant in error's retention of James W. Depuy, an expert first disclosed by the defendant in error as a potential trial witness in the underlying case to dispute the causal connection between the motor vehicle accident and one of Epright's principal claims of injury. The court based its challenged sanctions order upon a finding that the plaintiff in error had had impermissible ex parte communications with Depuy after the defendant in error disclosed him as a testifying expert, in what the court found to have been a clear violation of the rules of expert discovery set forth in Practice Book § 13-4.

In its writ of error, the plaintiff in error claims that the sanctions order issued by the trial court was improper because, among other things, (1) the plaintiff in error complied with the rules of practice governing the disclosure of expert witnesses, (2) no rule of practice prohibited the ex parte communications here at issue, and (3) the prerequisites necessary to justify imposition of a discovery sanction were not satisfied in this instance. The plaintiff in error also argues that, to the extent the rules of practice are interpreted to prohibit the ex parte communications in question, the rules are unconstitutionally vague because they fail to provide adequate notice that such communications are prohibited.[2] Because we conclude that our rules of practice do not clearly prohibit ex parte communications between an attorney for a party and a testifying expert witness previously disclosed by an opposing party, the order of sanctions in this case cannot stand.[3] Accordingly, we reverse the judgment of the trial court.

We begin by setting forth the relevant facts, as found by the trial court, in addition to the procedural history of the present dispute. The plaintiff in the underlying action, Epright, filed suit to recover underinsured motorist benefits under her insurance policy with the defendant in error in connection with a rear-end motor vehicle collision that occurred on December 14, 2012. Epright allegedly sustained various injuries as a result of this accident, including an injury to her left shoulder, which she claims to have resulted in multiple surgeries. On August 30, 2017, the defendant in error filed a disclo-

sure pursuant to Practice Book § 13-4, which identified Depuy as an expert witness who would opine, on the basis of his review of Epright's medical records, that the treatment Epright received for her left shoulder was not causally related to the motor vehicle accident.

On January 7, 2019, Attorney Kevin F. Brignole, an attorney with the plaintiff in error who represents Epright in the underlying action, deposed Depuy at the defendant in error's expense. Depuy was emphatic that he had reviewed all of Epright's medical records and that there was no indication in them that Epright had complained of any shoulder pain until well after the accident. He thus opined that Epright's shoulder injury was unrelated to the accident. Depuy was then asked by Kevin Brignole whether it would change his opinion on the issue of causation if he learned that Epright had been complaining about shoulder pain since the date of the accident. Depuy testified that if that were the case, then his opinion might, indeed, be different. Depuy was then asked if he had been provided with copies of Epright's deposition transcripts prior to rendering his opinion, and he replied that he had not. Epright had testified at her deposition that she had been complaining about shoulder pain ever since the date of the accident.

On January 22, 2019, without informing or obtaining consent from counsel for the defendant in error, Attorney Timothy Brignole, another attorney with the plaintiff in error, instructed his paralegal, Sandra Bryant, to contact Depuy's office to set up an appointment for Depuy to perform a medical examination of Epright for a fee. Timothy Brignole was within earshot of Bryant when she spoke with Depuy's secretary, who scheduled the medical examination for February 12, 2019. "Immediately following this discussion, [Kevin] Brignole filed a lengthy and detailed disclosure," indicating that Epright intended to call Depuy as an expert witness at trial (January 22 disclosure). Timothy Brignole then sent this disclosure to the general e-filing address of the law firm representing the defendant in error. The January 22 disclosure stated, among other things, that, upon information and belief, Depuy would testify that, contrary to his earlier opinion, he believed that Epright's shoulder injury was a direct result of the motor vehicle accident. In a letter to Depuy dated January 22, 2019, Timothy Brignole memorialized the scheduling of the examination and reiterated his intention to pay Depuy a fee for the examination.[4] Along with the letter, he enclosed Epright's deposition transcripts.[5] Prior to the January 22 disclosure, the plaintiff in error made no attempt to reach an agreement with or to inform counsel for the defendant in error about having Depuy consider Epright's deposition transcripts or having him examine her as possible bases for reconsidering his previously disclosed expert opinion concerning the causation of Epright's shoulder injury.

Depuy conducted the medical examination of Epright on March 5, 2019. The plaintiff in error never informed the defendant in error that the examination, which was originally scheduled for February 12, 2019, had been rescheduled for March 5, 2019. On March 6, 2019, Kevin Brignole sent the defendant in error a medical examination report prepared by Depuy. The report stated that, on the basis of his discussion with and examination of Epright, Depuy had come to believe that the shoulder injury of which she was complaining of in the underlying action was causally related to her December 14, 2012 accident.

On March 8, 2019, the defendant in error filed a motion for order to show cause, requesting that the court issue a summons and order to Depuy and his employer, Ortho-Connecticut/Danbury Orthopedics, requiring them to appear at a hearing before the court to demonstrate why its attached prayer for injunction and disgorgement should not be granted. In its prayer for injunction and disgorgement, the defendant in error sought to enjoin Depuy from giving any testimony in the underlying action, to enjoin and prohibit any use of his March 5, 2019 medical examination report at trial, and to require Depuy to disgorge all sums it had paid to him for his expert services in the underlying action.

On March 14, 2019, construing the motion for order to show cause as "a motion to preclude/motion to disqualify" Depuy, the court ordered that a hearing on the motion be held on April 4, 2019, and permitted counsel for the defendant in error to subpoena Depuy to appear at the hearing and produce his file in this matter. On March 21, 2019, the plaintiff in error, on behalf of Epright, filed an objection to the defendant in error's request that Depuy be precluded from testifying in the action, arguing, inter alia, that neither Connecticut case law nor Connecticut's rules of practice limit or prohibit a plaintiff from disclosing, as the plaintiff's own expert, an individual who previously was named by a defendant as a testifying expert. Furthermore, it argued that there is no authority in Connecticut requiring counsel for the plaintiff to seek any waiver, stipulation or permission from counsel for the defendant before having direct contact with a testifying expert whom the defendant has disclosed, especially when the plaintiff has disclosed that she too may call the expert to testify as her own expert witness at trial. On April 18, 2019, both the plaintiff in error, on behalf of Epright, and the defendant in error, on its own behalf, filed posthearing briefs.

In a memorandum of decision dated June 18, 2019, the trial court, *Frechette, J.*, granted the defendant in error's motion to disqualify Depuy. As its basis for so doing, the court stated that the conduct of the plaintiff in error constituted "a clear violation of Practice Book § 13-4." The primary basis for the court's conclusion to that effect was that the plaintiff in error had contacted

Depuy "ex parte, imparted information to him, set up an appointment for him to conduct an examination of [Epright], and offered him remuneration . . . ." The court further found that the January 22 disclosure was noncompliant with § 13-4 (e), a provision that explicitly authorizes parties in civil cases, inter alia, to adopt "all or a specified part of the expert disclosure already on file," because "the disclosure already filed by the defendant [in error with respect to Depuy] contained an opinion that was unambiguously unfavorable to [Epright], and the . . . January 22 disclosure references a future examination and an opinion favorable to [Epright]. Thus, it is clear that the January 22 disclosure is not an adoption of the [defendant in error's] disclosure of Dr. Depuy's expert opinion under . . . § 13-4 (e)."[6] (Emphasis omitted.)

The court then stated that our rules of practice "do not authorize, and thus implicitly forbid, counsel from making ex parte contact with the opposing party's disclosed expert." The court indicated that the plaintiff in error's contact with Depuy was "especially egregious" because "he was a currently disclosed expert for the opposing party, and the contact resulted in him 'switching sides' of the litigation close in time to the commencement of trial." The court stated: "To reiterate the obvious: parties and their attorneys are allowed to, and routinely do, hire and disclose expert witnesses in order to present their side of the case. As part of this, counsel need to be able to have candid discussions with their experts, and be allowed to cogently present their side of the case through the disclosed expert. Our Practice Book rules provide the means for obtaining information about the other side's expert, via interrogatories and depositions. These rules do not permit ex parte contact with the other side's experts. In the case at bar, [Epright] had, indeed, already disclosed two of her own experts. Severing the contact between the defendant [in error] and its only expert is prejudicial to the defendant [in error] because it was relying upon Dr. Depuy's testimony in the impending trial. If this court were to condone the [plaintiff in error's] behavior, it would encourage circumvention of Connecticut's mandatory discovery rules. . . . In addition, the defendant [in error] would be prevented from presenting the evidence at trial in a way that fits its story of the case, which it has a right to do." (Citation omitted; emphasis omitted; footnote omitted.) In sum, the court concluded that "there were plenty of alternative, appropriate courses of action available to [the plaintiff in error]"; however, none was taken.[7] On that basis, it granted the defendant in error's motion to disqualify Depuy.[8] In addition, it indicated in its ruling that the defendant in error could file a motion to recover any fees or costs related to this motion to preclude or any other expenses it had incurred as a result of the actions of the plaintiff in error.[9]

On July 24, 2019, the defendant in error filed a motion

for expenses requesting that the court order the plaintiff in error to reimburse it for all fees, costs, and expenses related to Depuy. Attached to the motion was an affidavit that set forth the value of the legal services that the defendant in error's counsel had rendered in connection with this dispute as to Depuy ($16,732.50), in addition to the amount the defendant in error had paid for Depuy's expert services up until that point ($12,895).

On January 2, 2020, the court issued its ruling on the defendant in error's motion for expenses, drawing upon much of its discussion in its earlier memorandum of decision that ordered Depuy's preclusion.[10] The court stated that, although there was "no Connecticut authority directly dealing with this issue," this was likely so "because so few attorneys would engage in direct ex parte contact with an opponent's expert." The court further stated: "[The plaintiff in error] still maintains, without citing any legal authority, that he is allowed to engage in ex parte contact with his opponent's expert. This is a disturbing position for counsel to take, and in the case at bar, has resulted in the wrongful disruption of the court's docket and significant costs to the defendant [in error]. [The plaintiff in error] seems to suggest that [it] is somehow defending the rights of the plaintiff's bar in taking this position. This is also a curious position: do plaintiffs not hire experts to help present their cases? Do counsel for plaintiffs want counsel for defense to engage in ex parte contact with experts retained (and paid) by them? To state the obvious, neither party—plaintiff or defendant—[is] permitted to directly engage in ex parte discussions with their opponent's expert. We have, like every other jurisdiction, clear and explicit rules regarding the obtaining of information from the other side's expert: they are known as rules of discovery. Every lawyer knows (or should know) what the rules are regarding the obtaining of information from an opponent's expert."

The court then concluded that the requirements for sanctions under our case law were satisfied. Citing to *Millbrook Owners Assn.*, *Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001),[11] the court concluded that Practice Book "§ 13-4 is clear," it "was violated," and the "preclusion of expert testimony and related attorney's fees are proportional to the noncompliance at issue." The court found that the plaintiff in error's improper ex parte communication had caused the defendant in error "to lose the [defendant in error's] disclosed expert." The court further stated: "This action by [the plaintiff in error] (1) caused a delay in the imminently scheduled trial (which irretrievably disrupted the court's docket); (2) caused the defendant [in error] to incur costs in the fees already paid to its expert; and (3) caused the defendant [in error] to now have to hire a new expert so that the defendant [in error] could properly defend this case." The court then ordered the plaintiff in error to pay the defendant in

error the sum of $12,895, which represented and was intended to compensate the defendant in error for all expenses it had paid to Depuy for his expert services. The court, however, did not order the plaintiff in error to pay the defendant in error's attorney's fees associated with this dispute. This writ of error followed. Additional facts will be set forth as necessary.

We begin by setting forth the legal principles regarding a trial court's power to sanction a party or attorney. A trial court's authority to impose sanctions comes from various sources. One such source is "our rules of practice, adopted by the judges of the Superior Court in the exercise of their inherent rule-making authority . . . ." *Wyszomierski* v. *Siracusa*, 290 Conn. 225, 234, 963 A.2d 943 (2009). With respect to disclosures and discovery of expert witnesses in civil matters, Practice Book § 13-4 (h) provides in relevant part that "[a] judicial authority may, after a hearing, impose sanctions on a party for failure to comply with the requirements of this section. . . ."[12]

In addition to the foregoing rule, our Supreme Court has "long recognized that, apart from a specific rule of practice authorizing a sanction, 'the trial court has the inherent power to provide for the imposition of reasonable sanctions, to compel the observance of its rules.' " *Millbrook Owners Assn.*, *Inc.* v. *Hamilton Standard*, supra, 257 Conn. 9. Subject to certain limitations, our trial courts may impose sanctions against attorneys and their clients "for a course of claimed dilatory, bad faith and harassing litigation conduct, even in the absence of a specific rule or order of the court that is claimed to have been violated." (Internal quotation marks omitted.) *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 393, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999). "[B]efore imposing any such sanctions, the court must afford the sanctioned party or attorney a proper hearing on the . . . motion for sanctions. . . . There must be fair notice and an opportunity for a hearing on the record." (Citation omitted; internal quotation marks omitted.) *Maris* v. *McGrath*, 269 Conn. 834, 844, 850 A.2d 133 (2004).

In order for a trial court's order of sanctions for a violation of a discovery order or rule to withstand scrutiny, three requirements must be met. "First, the order to be complied with must be reasonably clear. In this connection, however, we also state that even an order that does not meet this standard may form the basis of a sanction if the record establishes that, notwithstanding the lack of such clarity, the party sanctioned in fact understood the trial court's intended meaning. This requirement poses a legal question that we will review de novo. Second, the record must establish that the order was in fact violated. This requirement poses a question of fact that we will review using a

clearly erroneous standard of review. Third, the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." (Internal quotation marks omitted.) *Menna* v. *Jaiman*, 80 Conn. App. 131, 135, 832 A.2d 1219 (2003); see also *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 17–18.

Under these authorities, the question we must first address in reviewing the appropriateness of the sanction here at issue is whether Practice Book § 13-4 is "reasonably clear" in alerting attorneys that they may not have ex parte communications with experts who have been disclosed by their opponents as potential witnesses at trial. The trial court did not identify a particular portion of the rule that was violated; rather, it concluded that our "rules require the attorney seeking information from, or contact with, an opponent's expert, to follow the Practice Book rules of discovery, and obtain the information sought through those rules, not outside them." It reasoned that our "rules do not authorize, and thus implicitly forbid, counsel from making ex parte contact with the opposing party's disclosed expert."

We must therefore turn our attention to Practice Book § 13-4. In our review of that rule, we have found no explicit prohibition regarding ex parte communications with experts who have been disclosed by an opposing party as potential witnesses at trial. To that end, we note that in other provisions of our rules of practice where the judges of the Superior Court intended to limit a lawyer's ex parte communications, they have explicitly said so. See Rules of Professional Conduct 3.5 ("[a] lawyer shall not: (1) Seek to influence a judge, juror, prospective juror or other official by means prohibited by law; (2) *Communicate ex parte* with such a person during the proceeding unless authorized to do so by law or court order" (emphasis added)); Rules of Professional Conduct 4.2 ("[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so"). No such language, however, appears in Practice Book § 13-4.

In the absence of explicit language in Practice Book § 13-4 prohibiting ex parte communications by counsel with experts who have been disclosed by their opponents as possible trial witnesses, we must look more broadly at § 13-4 to determine whether it, as the trial court concluded, otherwise implicitly prohibits such ex parte communications, and, if so, whether it is "reasonably clear" in alerting attorneys to that prohibition. On the basis of our review of the rule, we cannot so conclude.

The trial court appears to have held that the plaintiff in error clearly violated Practice Book § 13-4 because the ex parte communications in this case fell outside of the prescribed formal discovery procedures set forth therein and were, therefore, forbidden by our rules. In arriving at this conclusion, the court cited to a 1993 formal opinion of the American Bar Association's Committee on Ethics and Professional Responsibility (ABA Committee), Formal Opinion 93-378, titled "Ex Parte Contacts with Expert Witnesses." See A.B.A. Committee on Ethics and Professional Responsibility, Formal and Informal Ethics Opinions 1983–1998 (2000) p. 213. In that formal opinion, the ABA Committee opined that, "[a]lthough the [American Bar Association's] Model Rules [of Professional Conduct] do not explicitly prohibit ex parte contacts with an opposing party's expert witness, a lawyer who engages in such contacts *may* violate Model Rule 3.4 (c)[13] if the matter is pending in federal court or in a jurisdiction that has adopted an expert-discovery rule patterned after Federal Rule of Civil Procedure 26 (b) (4) (A)." (Emphasis added; footnote added). Id. In reaching that conclusion, the ABA Committee cited to two decisions on the issue from the U.S. Court of Appeals for the Ninth Circuit, which had held that ex parte communications with the opposing party's expert witness constituted violations of the federal discovery rules then in effect. Id., p. 215; see *American Protection Ins. Co.* v. *MGM Grand Hotel-Las Vegas, Inc.*, 748 F.2d 1293 (9th Cir. 1984), withdrawn by *American Protection Ins. Co.* v. *MGM Grand Hotel-Las Vegas, Inc.*, 765 F.2d 925, 926 (9th Cir. 1985); *Campbell Industries* v. *M/V Gemini*, 619 F.2d 24 (9th Cir. 1980). Relying on these authorities, the trial court in the present case stated that, because Practice Book § 13-4 is a " 'mirror image' " of rule 26 (b) (4) of the Federal Rules of Civil Procedure, which, in the court's view, provides "specific, mandatory and exclusive procedures" for the conduct of expert discovery, it is clear that our "rules do not authorize, and thus implicitly forbid, counsel from making ex parte contact with the opposing party's disclosed expert."

Our reading of Practice Book § 13-4 mandates a different conclusion. As an initial matter, it appears that the trial court's ruling is predicated on outdated authorities. To be sure, the court relies almost exclusively on the ABA Committee's 1993 formal opinion (and the cases cited therein), which in turn was based on a pre-1993 version of rule 26 (b) (4) of the Federal Rules of Civil Procedure. The pre-1993 version of the federal rule contained language expressly providing that the rule set forth therein described the *exclusive* means by which a party could obtain discovery from expert witnesses. See Fed. R. Civ. P. 26 (b) (4) (1992) ("[d]iscovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b) (1) of this rule and acquired or developed in

anticipation of litigation or for trial, *may be obtained only as follows*" (emphasis added)); see also *Campbell Industries* v. *M/V Gemini*, supra, 619 F.2d 26 n.1 (citing pre-1993 federal expert discovery rule). Because the rules at that time provided the *exclusive* means for conducting discovery of expert witnesses, some courts reasoned that ex parte communications were prohibited because they fell outside the prescribed methods for discovery. See *Erickson* v. *Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996) ("[a]t the time of the present litigation, Federal Rule of Civil Procedure 26 (b) (4) provided that a lawyer's permissible contact with an opposing party's expert was limited to interrogatories and, upon leave of the court, depositions"). In 1993, however, rule 26 (b) (4) was amended, inter alia, by removing therefrom the phrase "[d]iscovery . . . may be obtained only as follows . . . ." Accordingly, the current form of rule 26 (b) (4) contains none of the limiting language that was previously set forth in the rule upon which the ABA Committee relied in its 1993 formal opinion.

Furthermore, and of particular importance here, although previous versions of Practice Book § 13-4, like previous versions of rule 26 (b) (4) of the Federal Rules of Civil Procedure, contained limiting language regarding expert discovery, that limiting language was eliminated from Practice Book § 13-4 in 2009 when major revisions to the rule took effect. Practice Book (2009) § 13-4, history. Before that time, the expert witness provision of our rules of practice provided in relevant part: "Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of Section 13-2 and acquired or developed in anticipation of litigation or for trial, *may be obtained only as follows* . . . ." (Emphasis added.) Practice Book (2008) § 13-4. Beginning in 2009, however, such language was eliminated from § 13-4 and additional changes were made. See Practice Book (2009) § 13-4. Although courts interpreting expert discovery rules premised on the pre-1993 federal rules and the pre-2009 Connecticut rules might have had some textual support for their conclusion that ex parte communications with experts disclosed by their opponents as potential witnesses at trial were prohibited because the rules prescribed the exclusive means for obtaining expert discovery, we have not found any language in our current rules that would allow us to interpret them in this manner.

We thus find unsupportable the court's holding, predicated on the ABA Committee's 1993 formal opinion, that, because ex parte communications with a disclosed expert are not expressly permitted by Practice Book § 13-4, such communications must implicitly be forbidden. Although, to reiterate, the trial court's analysis may have been reasonable under earlier versions of our rules, we have found no support for such a limited reading in

our current rules.

Another way in which Practice Book § 13-4 differs from the federal rules of expert discovery is its inclusion of § 13-4 (e),[14] which explicitly establishes a procedure by which a party can adopt and make use of an expert already disclosed by another party. It provides that in a party's notice of disclosure for an expert who was previously disclosed as a testifying expert by another party, a party shall adopt all or a specified part of the other party's disclosure and shall disclose "other expert opinions to which the witness is expected to testify and the substance of the grounds for any such expert opinion." Practice Book § 13-4 (e). This provision does not expressly or implicitly prohibit ex parte communications between the lawyer making the disclosure pursuant to § 13-4 and the expert so disclosed. See Practice Book § 13-4 (e). To the contrary, it implicitly suggests that some sort of communication may be required between the opposing counsel and the previously disclosed expert in order to facilitate the disclosure required by § 13-4 (e), particularly because that provision requires an attorney to disclose any other opinions to which the expert is expected to testify and the grounds therefor, which may be quite different, both in their nature and in the expert's reasons for holding them, from all other opinions and the grounds supporting them that the opposing party previously disclosed. Counsel cannot ethically make an expert disclosure under Practice Book § 13-4 based upon mere guesswork, and so he or she must somehow ascertain the nature and substance of an expert's opinions before filing the disclosure.[15] See Rules of Professional Conduct 3.1 ("[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law"); Rules of Professional Conduct 3.3 ("[a] lawyer shall not knowingly: (1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer").

At bottom, we cannot conclude that Practice Book § 13-4 is "reasonably clear" in alerting attorneys that they are prohibited from having ex parte communications with experts who have been disclosed by their opponents as possible trial witnesses. We also have found no case law in this state that makes it reasonably clear that such conduct is prohibited. Indeed, the trial court itself recognized that there was "no Connecticut authority directly dealing with this issue . . . ." Attorneys practicing in Connecticut courts must be able to consult our rules and be able to rely upon them to clearly define appropriate and inappropriate conduct.

We have no occasion to take a position on whether

ex parte communications with an opposing party's disclosed expert should or should not be permissible; we simply hold today that Practice Book § 13-4 does not clearly prohibit such conduct.[16] Because we cannot conclude that the ex parte communications at issue in this case were proscribed by our rules or, thus, that it was wrongful to engage in them, the sanction of requiring counsel, on the basis of such communications, to pay all expenses incurred by his opponent for the services of the expert so communicated with cannot stand. Put differently, because the ex parte communications at issue were not impermissible under § 13-4, the trial court's justification for the sanction in this case based on its findings that the plaintiff in error's conduct was "wrongful" and "caused the defendant [in error] to lose" its disclosed expert is clearly erroneous. (Emphasis omitted.) The "loss" of Depuy cannot be said to have been caused by wrongful conduct of the plaintiff in error. Rather, any "loss" of Depuy must be attributed to the plaintiff in error's questioning of Depuy at a deposition, when Depuy testified favorably to the plaintiff in error by stating that if he were presented with evidence that Epright had been complaining of shoulder pain since the time of the accident (which she had testified to at her own deposition prior to the defendant in error's disclosure of Depuy), his opinion as to causality might, indeed, be different. The plaintiff in error's subsequent conduct in having its paralegal contact Depuy to provide him a more complete body of relevant evidence (i.e., Epright's deposition transcripts demonstrating her persistent complaints of shoulder pain since the date of the accident) and providing Depuy with an opportunity to do a physical examination of Epright (instead of solely reviewing a sampling of medical records selected by counsel for the defendant in error) is devoid of any indication that the plaintiff in error was thereby attempting impermissibly to influence Depuy not to testify or to testify falsely.

In concluding that the ex parte communications in this case were improper, the court stated that "counsel need to be able to have candid discussions with their experts, and be allowed to cogently present *their side* of the case through the disclosed expert." (Emphasis in original.) The court reasoned that if it were to condone the ex parte communications at issue, "the defendant [in error] would be prevented from presenting the evidence at trial in a way that fits its story of the case, which it has a right to do."

The court's rationale, however, fails to recognize two important points. First, "no party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege, no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance."[17] *Doe* v. *Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983); see id. ("[e]ven an expert whose

knowledge has been purchased cannot be silenced by the party who is paying him on that ground alone"). As this court has stated, "[t]here is no justification for a 'rule that would wholly exempt experts from placing before a tribunal factual knowledge relating to the case in hand [or] opinions already formulated . . . .' " *Lane* v. *Stewart*, 46 Conn. App. 172, 176, 698 A.2d 929, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997); see also *Thomaston* v. *Ives*, 156 Conn. 166, 167, 173–74, 239 A.2d 515 (1968) (landowner in eminent domain proceeding may require appraiser hired by state, whom state did not call, to testify concerning valuation of land); *Loiseau* v. *Board of Tax Revenue*, 46 Conn. App. 338, 345, 699 A.2d 265 (1997) ("[t]hat the plaintiffs might have the opportunity to cross-examine a defense expert does not provide fair access if the defendant chooses not to call the expert as a witness").

Second, once an expert is disclosed, the status of that expert changes. Prior to the disclosure, the expert likely served as a consultant to the attorney who, thus, in the absence of exceptional circumstances, was a person about whom the other party had no right to demand information through discovery. See Practice Book § 13-4 (f).[18] In the absence of exceptional circumstances, the attorney can prevent his or her opponent from acquiring information about a consulting expert simply by refraining from disclosing him or her as a person who might testify at trial. See Practice Book § 13-4 (f). The rule is intended to allow litigants to consult experts in order to evaluate a claim "without fear that every consultation with an expert may yield grist for the adversary's mill." *Rubel* v. *Eli Lilly & Co.*, 160 F.R.D. 458, 460 (S.D.N.Y. 1995); see also *Petterson* v. *Superior Court of Merced County*, 39 Cal. App. 3d 267, 273, 114 Cal. Rptr. 20 (1974) (explaining that rule precluding discovery of consultative experts is "a shield to prevent a litigant from taking undue advantage of his adversary's industry and effort, not a sword to be used to thwart justice").

Following an expert disclosure, however, a transformation occurs. By making the disclosure, the attorney essentially certifies to the court and the opposing party that the expert is no longer a consultant but someone who has relevant "scientific, technical or other specialized knowledge" that can "assist the trier of fact in understanding the evidence or in determining a fact in issue." Conn. Code Evidence § 7-2; see *Lane* v. *Stewart*, supra, 46 Conn. App. 177 ("[b]y disclosing the witness, the defendant made it possible for the plaintiffs to discover evidence that the plaintiffs decided was beneficial to their case and should be brought before the trier of fact"). Because a disclosed expert has been identified as someone who can help the fact finder ascertain the truth in the matter, the opposing party is permitted to acquire information about the expert in connection with his or her opinions, even if some of that information

may be helpful to the opposing party's case. This, in fact, is why our rules allow depositions of expert witnesses; see Practice Book § 13-4 (c); and require that the disclosing party, in the absence of certain exceptions, "produce to all other parties all materials obtained, created and/or relied upon by the expert in connection with his or her opinions in the case . . . ." Practice Book § 13-4 (b) (3). Such materials logically and necessarily include all communications between the expert and the attorney who hired him concerning the case, including communications from the attorney to the expert as to his theory of the case and his hopes or expectations as to the nature and substance of the expert's opinions about the case. See, e.g., *In re Pioneer Hi-Bred International, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001) (The federal expert witness discovery rule "proceeds on the assumption that fundamental fairness requires disclosure of all information supplied to a testifying expert in connection with his testimony. Indeed, we are quite unable to perceive what interests would be served by permitting counsel to provide core work product to a testifying expert and then to deny discovery of such material to the opposing party.").

It inevitably follows that once a party has had a chance to acquire information about an opposing party's disclosed expert, such party may wish to present that expert's testimony at trial, especially if that expert agrees with that party on one or more issues in dispute. Our rules of practice contemplate this. As previously explained, Practice Book § 13-4 (e) establishes a procedure by which a party can adopt and make use of an expert already disclosed by another party. The party must file a disclosure that states that it is adopting the prior disclosure in whole or in part, and, to the extent the expert is making a new opinion, the party must disclose the "other expert opinions to which the witness is expected to testify and the substance of the grounds for any such expert opinion. . . ." Practice Book § 13-4 (e).

Our decision in *Lane* v. *Stewart*, supra, 46 Conn. App. 177, further highlights the significance of an expert disclosure. In *Lane*, a personal injury action, the defendant retained and disclosed an expert witness who was deposed by the plaintiffs. Id., 174–75. Soon thereafter, the defendant, for tactical reasons, decided not to call its expert at trial and sought to quash the subpoena duces tecum served on its expert by the plaintiffs. Id., 175–76. The trial court in that case granted the motion to quash, but this court held that the granting of the motion to quash was an abuse of discretion. Id., 175, 177. This court reasoned that, "[b]y disclosing the witness, the defendant made it possible for the plaintiffs to discover evidence that the plaintiffs decided was beneficial to their case and should be brought before the trier of fact. To allow the defendant to prevent this witness from testifying may have deprived the trier of

fact of material and relevant information that would have assisted it in reaching a decision in the case." Id., 177. We thus held that, "where one party has disclosed an expert witness pursuant to Practice Book § 220 (D) [now Practice Book § 13-4], and that expert witness has either been subsequently deposed by the opposing party, or the expert's report has been disclosed pursuant to discovery, then either party may call that expert witness to testify at trial." Id.

*Lane*, of course, was decided before the addition of Practice Book § 13-4 (e) to our rules of practice, which provides an avenue for an opposing party to disclose an opponent's previously disclosed expert witness as an expert she also wishes to call at trial. Nevertheless, a logical interpretation of § 13-4 (e), in light of *Lane*, is that a party who has complied with the disclosure requirements of § 13-4 (e) should generally be permitted to call that previously disclosed expert to testify at trial. See id. To hold otherwise would deprive "the trier of fact of material and relevant information that would have assisted it in reaching a decision in the case." Id.

The judgment is reversed and the case is remanded with direction to render judgment denying the defendant in error's motion for sanctions.

In this opinion the other judges concurred.

[1] We note that the writ of error also named Timothy Brignole, an attorney with Brignole, Bush & Lewis, LLC, as a plaintiff in error.

[2] We note that the plaintiff in error, on behalf of Epright, filed an interlocutory appeal simultaneously with its writ of error. The appeal challenged the trial court's order disqualifying Depuy from testifying at trial. See *Epright* v. *Liberty Mutual Ins. Co.*, 211 Conn. App. 26, 26, 271 A.3d 731 (2022). This court dismissed Epright's appeal for lack of subject matter jurisdiction because the challenged interlocutory order is not a final judgment for purposes of appeal. Id.

[3] In its briefing before this court, the plaintiff in error also argues that it was inappropriate for the court to disqualify Depuy as an expert witness. We note that the only issue that we address on this writ of error is the appropriateness of the sanction of expenses in the amount of $12,895. This is the only claim that the plaintiff in error has standing to raise at this juncture. To the extent that the plaintiff in error would like to challenge the disqualification of Depuy in the underlying matter, that would be the prerogative of its client, Epright, who may file an appeal after there is a final judgment in the underlying action. See *Epright* v. *Liberty Mutual Ins. Co.*, 211 Conn. App. 26, 26, 271 A.3d 731 (2022).

[4] The trial court noted that "[t]his correspondence directly contradicts the following statement in Attorney [Timothy] Brignole's affidavit, dated March 15, 2019: 'I have never ever spoken to Dr. Depuy in person, via e-mail, via letter, via fax or any other type of communication.' "

[5] The record discloses that Epright's deposition was taken on June 21, 2017, which was approximately two months prior to the defendant in error's disclosure of Depuy as an expert witness and the issuance of Depuy's independent medical record review. Depuy issued two subsequent addenda to his medical record review report, one on October 8, 2017, and another on November 18, 2018. Neither of these submissions took into consideration Epright's deposition testimony concerning her shoulder injury.

[6] The full text of Practice Book § 13-4 (e) provides: "If any party expects to call as an expert witness at trial any person previously disclosed by any other party under subsection (b) hereof, the newly disclosing party shall file a notice of disclosure: (1) stating that the party adopts all or a specified part of the expert disclosure already on file; and (2) disclosing any other expert opinions to which the witness is expected to testify and the substance of the grounds for any such expert opinion. Such notice shall be filed within the time parameters set forth in subsection (g)."

[7] For example, the court stated that the plaintiff in error "could have cross-examined Dr. Depuy at his deposition using [Epright's] deposition, which Dr. Depuy said he had not read. [The plaintiff in error] could have also suspended Dr. Depuy's deposition until he read [Epright's] deposition. In addition, they could have waited for trial and cross-examined Dr. Depuy, on the stand, to elicit the desired information. Or, finally, they could have had another expert (they had two disclosed) opine on the same subject matter."

[8] The court explicitly found, however, that the plaintiff in error did not violate the Rules of Professional Conduct, to wit, rule 3.4 (3), because the court took counsel at their word that they thought their conduct was permissible.

[9] On July 8, 2019, the plaintiff in error, on behalf of Epright, filed a motion to reargue and reconsider the defendant in error's motion to disqualify Depuy. The court denied the motion on September 9, 2019, concluding that Epright had not presented any additional facts or law that were not raised or could have been raised in her original filings.

[10] In support of its ruling on the motion for expenses, the court incorporated by reference the analysis it employed in its previous opinion regarding Depuy's disqualification. The court stated in relevant part: "While this court made no explicit order against hiring opposing counsel's expert, that action goes against common sense and numerous prescribed procedural rules as explained in this court's previous opinion on disqualification."

[11] As discussed in greater detail subsequently in this opinion, *Millbrook Owners Assn.*, *Inc.*, sets forth the three part test to determine whether sanctions for a violation of a discovery order withstand scrutiny. See *Millbrook Owners Assn.*, *Inc.* v. *Hamilton Standard*, supra, 257 Conn. 17–18.

[12] Practice Book § 13-4 (h) further provides in relevant part: "An order precluding the testimony of an expert witness may be entered only upon a finding that: (1) the sanction of preclusion, including any consequence thereof on the sanctioned party's ability to prosecute or to defend the case, is proportional to the noncompliance at issue, and (2) the noncompliance at issue cannot adequately be addressed by a less severe sanction or combination of sanctions."

[13] At that time, rule 3.4 of the American Bar Association's Model Rules of Professional Conduct provided in relevant part: " 'A lawyer shall not . . . (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists . . . .' " (Footnote omitted.) A.B.A. Committee on Ethics and Professional Responsibility, supra, p. 213. Rule 3.4 of the Rules of Professional Conduct similarly provides in relevant part: "A lawyer shall not . . . (3) [k]nowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists . . . ."

[14] See footnote 6 of this opinion for the full text.

[15] Although the precise issue before this court is whether the ex parte communication at issue is sanctionable under Practice Book § 13-4, we take a moment to address the January 22 disclosure of Depuy. In this disclosure, Epright stated, inter alia, that "[t]he expert ascertained through his review of [Epright's] medical records, review of [Epright's] deposition testimony and independent medical evaluation performed on [Epright] that on December 14, 2012, she was involved in a motor vehicle accident wherein she sustained injuries to her neck and shoulders, as a result of the accident." Although the plaintiff in error, on the basis of Depuy's deposition testimony, had a good faith basis to believe that Depuy would testify that Epright's injuries were caused by the motor vehicle accident, the plaintiff in error should have stated the actual basis for its disclosure and expressed its intention of having Depuy review the deposition transcripts and perform a medical evaluation, rather than suggesting that a deposition review and medical examination had already been conducted.

[16] That is not to say that there are no ethical restrictions that apply to ex parte communications with expert witnesses. For example, the ethical restrictions that have been developed for ex parte communications with fact witnesses similarly apply to expert witnesses. See, e.g., General Statutes § 53a-151 ("[a] person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding"); Rules of Professional Conduct 3.4 ("[a] lawyer shall not . . . [f]alsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law"); Rules of Professional Conduct 4.1 ("[i]n the course of representing a client a lawyer shall not

knowingly: (1) Make a false statement of material fact or law to a third person"); Rules of Professional Conduct 4.2 (generally, attorneys must abstain from contact with represented person); Rules of Professional Conduct 4.3 (attorney who is "dealing on behalf of a client with a person who is not represented by counsel . . . shall not state or imply that the lawyer is disinterested"); Rules of Professional Conduct 4.4 ("[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person").

To the extent the legislature or the judges of the Superior Court in the exercise of their inherent rule-making authority do not believe the ethical restrictions already in place are sufficient, it is, of course, their prerogative to enact a law or rule that clearly prohibits ex parte communications with a testifying expert disclosed by another party. At least one state has done so. See Idaho R. Civ. P. 26 (b) (4) (v) ("Limitation on Contact With Expert. A party must not contact a retained expert disclosed by another party pursuant to this Rule without first obtaining the permission of the party who retained the expert or by the court.").

[17] As another court aptly put it: "It would, though, appear that the underlying factor which causes the courts to treat expert testimony somewhat differently from testimony of other witnesses is that the party has an investment in the witness. Somehow it is believed that he has bought and paid for the witness and that the other party should not share in his property. We cannot accept this 'oath helper' approach to discovery. It is inconsistent with our basic assumption that the trial is a search for truth and not a tactical contest which goes to either the richest or to the most resourceful litigant." *Seven-Up Bottling Co.* v. *United States*, 39 F.R.D. 1, 2 (D. Colo. 1966).

[18] Practice Book § 13-4 (f) provides: "A party may discover facts known or opinions held by an expert who had been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial only as provided in Section 13-11 or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."